IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: : No. 1:25-bk-02775-HWV
COMPREHENSIVE HEALTHCARE :
MANAGEMENT SERVICES, LLC : Chapter 11
d/b/a BRIGHTON REHABILITION :
AND WELLNESS CENTER :
 :
           Debtor

## MOTION OF THE DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDER PROVIDING FOR ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES

The Motion of Comprehensive Healthcare Management Services, LLC d/b/a Brighton Rehabilitation and Wellness Center, the above-named Debtor, by and through its attorneys, Cunningham, Chernicoff & Warshawsky, P.C., requesting the Entry of Interim and Final Order Providing for Adequate Assurance of Payment for Future Utility Services is as follows:

### BACKGROUND

1. On September 29, 2025, Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code"). As a result thereof, the Debtor has been appointed as a Debtor-in-Possession and operates its business and manages its assets.

2. The Debtor is a Pennsylvania limited liability company engaged in the healthcare business and specifically owns and operates a skilled nursing facility having approximately 600 beds (the "Business").

3. At the outset of this Chapter 11 case, the Debtor intends to continue to operate its business.

## RELIEF REQUESTED AND BASIS THEREFOR

4. Section 366 of the United States Bankruptcy Code prevents utility companies from discontinuing, altering or refusing service to a debtor during the first 20 days of a bankruptcy case. Such Section further provides, however, that 30 days after the Petition Date, a utility company has the option of terminating its services under Section 366(c)(2) of the Bankruptcy Code if a debtor has not furnished adequate assurance of payment to the Utility Providers.

5. By this Motion, the Debtor seeks entry of an Interim Order (a) determining that its Utility Providers (as defined below) have been provided with adequate assurance of payment within the meaning of Section 366 of the Bankruptcy Code, pending the entry of a Final Order hereunder; (b) approving the Debtor's proposed offer of adequate assurance and procedures whereby Utility Providers may request additional or different adequate assurance; (c) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of pre-petition amounts outstanding or on account of any perceived inadequacy of the Debtor's proposed adequate assurance, pending entry of the Final Order; (d) establishing procedures for the Utility Providers to seek to opt out of the Debtor's proposed adequate assurance procedures; (e) determining that the Debtor is not required to provide any additional adequate assurance, beyond what is proposed by this Motion, pending entry of the Final Order; and (f) setting a final hearing (the "Final Hearing") on the Debtor's proposed adequate assurance.

6. Uninterrupted utility services are essential to ongoing operations of the Debtor and therefore, to the success of this Chapter 11 case. If the Utility Providers (as defined below) refuse or discontinue service, even for a brief period, the Debtor's business

operations would be severely disrupted. The impact on the Debtor's business operations, customer relationships, cash flow and revenue would be extremely harmful and would jeopardize the Debtor's efforts to maximize the value of its Assets for the benefit of all creditors. It is therefore critical that utility services continue on an uninterrupted basis. The Debtor anticipates that to purchase new inventory that many suppliers will request cash on delivery, thereby causing the Debtor to need greater cash flow than was necessary pre-petition.

## THE UTILITY PROVIDERS

7. In connection with the operation of its business and management of its properties, the Debtor obtains gas, water, sewer, electric, telephone and other similar utility services provided by utility companies (the "Utility Providers"). Attached hereto as Exhibit "A" is a list of the Utility Providers who may have rendered services to the Debtor as of the Petition Date (the "Utility Service List").[1]

8. The majority of the Debtor's Utility Providers provide what could be described as traditional utility services related to the day-to-day operation of the Debtor's various retail locations.

9. The Debtor, until recently, has a history of full payment with each of the Utility Providers and, historically, has generally paid its utility bills in full when due.

## PROPOSED ADEQUATE ASSURANCE PAYMENTS

---

[1] The Debtor reserves all rights to argue that any entity listed on the Utility Service List is not a utility company within the meaning of Section 366 of the United States Bankruptcy Code, and to argue that any such entity is compelled by contractual obligation, state or local law, or otherwise, to continue to furnish services to the Debtor notwithstanding the filing of the Chapter 11 case.

10. The Debtor fully intends to pay all post-petition obligations owed to the Utility Providers in a timely manner. The Debtor believes that its budget under its Emergency Motion for the Use of Cash Collateral allocates more than sufficient funds to pay all post-petition utility obligations.

11. The Debtor proposes to provide a deposit equal to two (2) weeks of utility service, calculated as a historical average over the past twelve (12) months, to any Utility Provider who requests a deposit in writing (the "Adequate Assurance Deposit"), provided that such requesting Utility Provider does not already hold a deposit equal to or greater than two (2) weeks of utility services, and provided further that such Utility Provider is not currently paid in advance for its services. As a condition of requesting and accepting an Adequate Assurance Deposit, the requesting Utility Provider shall be deemed to have stipulated that the Adequate Assurance Deposit continues adequate assurance of future payment to such Utility Provider within the meaning of Section 366 of the Bankruptcy Code, and shall further be deemed to have waived any right to seek additional adequate assurance during the course of this Chapter 11 case.

12. The Debtor submits that the Adequate Assurance Deposit, in conjunction with the Debtor's ability to pay for future utility services in the ordinary course of business (collectively the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Providers. If any Utility Provider believes additional assurance is required, it must request such additional assurance pursuant to the procedures set forth below.

# PROPOSED ADEQUATE ASSURANCE PROCEDURES

13. In light of the severe consequences to the Debtor of any interruption in services by the Utility Providers, but recognizing the right of the Utility Providers to evaluate the Proposed Adequate Assurance on a case-by-case basis, the Debtor proposes that the Court enter an Interim Order approving and adopting the following procedures (the "Adequate Assurance Procedures"):

    a. Absent compliance with the Adequate Assurance Procedures set forth herein, the Utility Providers are forbidden to discontinue, alter or refuse service on account of any unpaid pre-petition charges, or require additional adequate assurance of pay other than the Proposed Adequate Assurance, pending entry of a Final Order as to this Motion.

    b. Any Utility Provider desiring an Adequate Assurance Deposit must serve a request (an "Adequate Assurance Request") so that it is received by

> Cunningham, Chernicoff & Warshawsky, P.C.
> 2320 North Second Street
> Harrisburg, PA   17110-1008
> Attention:  Robert E. Chernicoff, Esquire

    c. Any Adequate Assurance Request must (i) be made in writing; (ii) set forth the location for which utility services are provided; (iii) include a summary of the Debtor's payment history relevant to the affected account(s), including any security deposits, and (iv) set forth why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

    d. Upon the Debtor's receipt of any Adequate Assurance Request at the addresses set forth above, the Debtor shall have the greater of (i) 14 days from the receipt of such Adequate Assurance Request or (ii) 30 days from the Petition Date (collectively, the "Resolution Period") to negotiate with such Utility Provider to resolve such Utility Provider's request for additional assurance of payment.

    e. The Debtor may, in its discretion, resolve any Adequate Assurance Request by mutual agreement with the Utility Provider and without further order of the Court, and may, in connection with any such agreement, in its discretion, provide a Utility Provider with additional adequate assurance of future payment, including but not limited to cash deposits, prepayments and/or other forms of security, without further order of this Court if the Debtor believes such additional assurance is reasonable.

f. If the Debtor determines that the Adequate Assurance Request is not reasonable and is not able to reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtor, during or immediately after the Resolution Period, will request a hearing before this Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing") pursuant to Section 366(c)(3) of the Bankruptcy Code.

g. Pending resolution of any such Determination Hearing, such particular Utility Provider shall be restrained from discontinuing, altering, or refusing service to the Debtor on account of unpaid charges for pre-petition services or on account of any objections to the Proposed Adequate Assurance.

## PROCESS FOR OPTING OUT OF ADEQUATE ASSURANCE PROCEDURES

14. Prior to the October 17, 2005 modification to Section 366 of the Bankruptcy Code, chapter 11 debtors were able, pursuant to Section 366 of the Bankruptcy Code, to place the burden upon utility providers to argue that any form of adequate assurance proposed by a debtor was insufficient. The changes provided to Section 366 of the Bankruptcy Code may have shifted the burden upon debtors to provide adequate assurance that the utility provider would find satisfactory, and to seek court review if the utility provider does not accept the proposed adequate assurance. It is possible, therefore, to read Section 366 as it currently exists to provide that 29 days after the Petition Date a Utility Provider could announce that any adequate assurance proposed by the Debtor is not acceptable, demand an overly large deposit or prepayment from the Debtor and threaten to terminate utility services on the next day unless the demands of this Utility Provider are met. The Debtor does not believe that this is the intention of revised Section 366 of the Bankruptcy Code and as currently written to so provide. Nonetheless, in order to assure continued, uninterrupted services and operations by the Debtor, the Debtor believes it necessary to require Utility Providers to raise any objections to the Adequate Assurance

Procedures set forth above so that any such objections may, if possible, be heard by this Honorable Court prior to the end of the 30 day period following the Petition Date.

15. Accordingly, the Debtor proposes the following procedures:

    a. Any Utility Provider who objects to the Adequate Assurance Procedures set forth above must file an objection to such procedures (the "Procedure Objection") so that it is actually filed within 20 days of the entry of the Interim Order and received by counsel to the Debtor, Cunningham, Chernicoff & Warshawsky, P.C., at 2320 North Second Street, Harrisburg, PA 17110-1008, Attention: Robert E. Chernicoff, Esquire, Facsimile number 717-238-4809, within such 20 day period.

    b. Any Procedure Objection must (i) be made in writing; (ii) set forth the location for which utility services are provided; (iii) include a summary of the Debtor's payment history relevant to the affected account(s), including any security deposits; (iv) set forth why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment; and (v) set forth why the Utility Provider believes it should be exempted from the Adequate Assurance Procedures.

    c. The Debtor may, in its discretion, resolve any Procedure Objection by mutual agreement with the Utility Provider and without further order of the Court.

    d. If the Debtor determines that the Procedure Objection is not reasonable and is not able to reach a prompt alternative resolution with the Utility Provider, the Procedure Objection will be heard at the Final Hearing.

    e. All Utility Providers who do not timely file a Procedure Objection are deemed to consent to the Adequate Assurance Procedures and shall be bound by the Adequate Assurance Procedures. The sole recourse of all Utility Providers who do not timely file a Procedure Objection shall be to submit an Adequate Assurance Request pursuant to the Adequate Assurance Procedures, and shall be enjoined from ceasing performance pending any hearing that may be conducted pursuant to the Adequate Assurance Procedures.

**FINAL HEARING DATE**

16. In order to resolve any Procedure Objections within 30 days following the Petition Date, the Debtor requests that the Court schedule the Final Hearing approximately 25 days after the Petition Date.

## SUBSEQUENT MODIFICATIONS
## OF UTILITY SERVICE LIST

17. The Debtor has made an extensive and good faith effort to identify their Utility Providers and include them on the Utility Service List. Nonetheless, it is possible that certain Utility Providers have not yet been identified by the Debtor or included on the Utility Service List. To the extent that the Debtor identifies additional Utility Providers, the Debtor will file amendments to the Utility Service List, and shall serve copies of the Interim Order and Final Order (when and if entered) on such newly-identified Utility Providers. The Debtor requests that the Interim Order and Final Order be binding upon all Utility Providers, regardless of when such Utility Provider was added to the Utility Service List.

## AUTHORITY FOR THE
## REQUESTED RELIEF

18. The Debtor submits that the Court should use its powers under Section 105 of the Bankruptcy Code in this Chapter 11 case because the issuance of an Interim Order as requested herein is necessary to preserve the Debtor's ability to maximize the value of its Assets.

19. In particular, this Court has the authority to grant the relief requested herein pursuant to Section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title". The purpose of Section 105(a) of the Bankruptcy Code is "to assure the bankruptcy courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction". 2 *Collier on Bankruptcy* ¶105.01, at 105-5 to 105-6 (15th rev. ed. 2001).

20. Determinations of "adequate assurance" within the meaning of Section 366 of the Bankruptcy Code are fully within this Court's discretion. See *In re Marion Steel Co.*, 35 B.R. 188, 198 (Bankr. D. Ohio 1983). In this regard, bankruptcy courts are not bound by state or local regulations governing what constitutes adequate assurance of payment for post-petition utility services. *Id.* at 199; *In re Begley*, 41 B.R. 402, 405-06 (Bankr. E.D. Pa. 1984), aff'd, 760 F.2d 46 (3d Cir. 1987).

21. Whether utilities are subject to an unreasonable risk of nonpayment for post-petition services must be determined from the facts of each case. See *In re Keydata Corp.*, 12 B.R. 156 (Bankr. D. Mass. 1981). "Section 366(b) requires the Bankruptcy Court to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require, however, an 'absolute guarantee of payment'". *In re Caldor, Inc.*, 199 B.R. 1, 3 (Bankr. S.D.N.Y. 1996) (citations omitted); see also *In re Adelphia Bus. Solutions, Inc.* 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002).

22. While revised Section 366 does clarify what constitutes adequate assurance of payment and what factors the courts should consider when deciding whether such assurance is adequate, Congress still instructs the courts to determine what amount, if any, is necessary to provide adequate assurance of payment. Under Section 366(c), there is nothing to prevent a court from deciding that, on the facts of the case before it, the amount required of the Debtor to adequately assure payment to utility providers is zero or nominal.

23. Under Section 366 prior to the BACPA, courts had the discretion to determine that the amount of adequate assurance payments or collateral required in a particular case was zero. See *Virginia Elec. & Power Co. v. Caldor, Inc., - N. Y.*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted

narrowly, we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security', provided for under §336(b), included the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment'".) Because the revised Section 366(c)(3) still allows courts the authority to order the modification of the amount of an assurance of payment, the courts remain free to require no deposit or security where none is necessary to ensure adequate assurance of payment in any particular case.

24. In revising Section 366 of the Bankruptcy Code, Congress had the opportunity to establish a minimum adequate assurance amount that would be required in a case. Congress did not set a minimum adequate assurance amount, but rather vested discretion in the courts to determine the appropriate level of adequate assurance required in a case. Therefore, it is clear that Section 366, as revised, does not give utility companies a blank check or the right to extract from debtors whatever amount of adequate assurance each might desire.

25. The Debtor submits that on the facts of this case, the Proposed Adequate Assurance is sufficient. By way of comparison, the United States Bankruptcy Court for the Southern District of New York determined, in a large case filed after the BACPA became effective, that a deposit equal to 50% of the debtors' monthly utility expenses was sufficient to constitute adequate assurance. See *In re Calpine Corp.*, Case No. 05-60200 (BL) (Bankr. S.D.N.Y. Dec. 20, 2005); *In re Refco, Inc.*, Case No. 05-60006 (RDD) (Bankr. S.D.N.Y. Dec. 9, 2005).

26. Based on the foregoing facts, the Debtor submits that granting the relief requested is both necessary and appropriate. The Debtor submits that, based on the facts

of this case, no other deposits should be required in addition to the Adequate Assurance Deposits and the Proposed Adequate Assurance set forth above. Such relief will help the Debtor to maximize the value of the Assets for the benefit of all creditors, retain the Debtor's cash for continued operations, increase the likelihood of successful reorganization, and will not prejudice the rights of the Utility Providers under Section 366 of the Bankruptcy Code.

## NOTICE

27. The Debtor will provide notice of this Motion to all utility providers to the Debtor, the Office of the United States Trustee, the IRS, the U.S. Attorney, the Pennsylvania Department of Revenue through the Office of Attorney General, the Pennsylvania Department of Labor and Industry, Bureau of Employment Tax Operations, as well as the twenty (20) largest unsecured creditors of the Debtor and any parties who have requested service.

**WHEREFORE**, Comprehensive Healthcare Management Services, LLC d/b/a Brighton Rehabilitation and Wellness Center, the above named Debtor, respectfully requests that this Honorable Court enter the Interim Order submitted herewith:

    a.    Determining that Debtor's Utility Providers have been provided with adequate assurance of payment within the meaning of Section 366 of the Bankruptcy Code, pending the entry of a Final Order;

    b.    Approving the Debtor's Proposed Adequate Assurance and the Adequate Assurance Procedures whereby Utility Providers may request additional or different adequate assurance;

    c.    Prohibiting the Utility Providers from altering, refusing or discontinuing services on account of pre-petition amounts outstanding, pending entry of a Final Order;

    d.    Establishing procedures for the Utility Providers to seek to opt out of the Debtor's proposed adequate assurance procedures;

      e.      Determining that the Debtor is not required to provide any additional adequate assurance, beyond what is proposed by this Motion, pending entry of a Final Order;

      f.      Providing the Utility Providers with notice of the hearing on the Proposed Adequate Assurance before entering a Final Order; and

      g.      Granting the Debtor such other and further relief as is just and proper.

Respectfully submitted:

CUNNINGHAM, CHERNICOFF
& WARSHAWSKY, P.C.

By: /s/ Robert E. Chernicoff
Robert E. Chernicoff, Esquire
Attorney I.D. No. 23380
2320 North Second Street
P. O. Box 60457
Harrisburg, PA 17106-0457
(717) 238-6570

Date: October 1, 2025